# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

MELBRY PHILLIPS DEVINE, )
         )
   Plaintiff,   )
         )
v.          )
         )  Case No. CV415-130
CAROLYN COLVIN,   )
Acting Commissioner of  )
Social Security,    )
         )
   Defendant.  )

# <u>REPORT AND RECOMMENDATION</u>

Alleging disability due to diabetes mellitus, psychiatric disorders, inflammatory bowel disease, bipolar disorder, manic depression, and a host of other alleged ailments (Tr. 195),[1] plaintiff Melbry Devine seeks judicial review of the Social Security Commissioner's denial of her application for a period of disability and Disability Insurance benefits (DIB), as well as Supplemental Security Income (SSI). Doc. 11 at 1.

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket at Doc. 8.

# I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the Administrative Law Judge (ALJ) applies

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform

her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[1] An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnotes added).

"For DIB claims, a claimant is eligible for benefits where []he demonstrates disability on or before the last date for which []he w[as] insured. 42 U.S.C. § 423(a)(1)(A) (2005). Because [Devine's] last insured date was December 31, [2015 (Tr. 160)], her DIB appeal requires a showing of disability on or before that date." *Moore*, 405 F.3d at 1211.

## II. ANALYSIS

Devine, 60 when the ALJ denied her benefits claims (Tr. 73, 191)

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id*. (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

and 56 on her alleged onset date (Tr. 191), has a tenth grade education (Tr. 23) and past work experience as a cleaner, cashier, deli worker, and checker. Tr. 24, 49. She filed for DIB and SSI on April 8, 2011 (Tr. 180), alleging a disability onset of April 4, 2009. Tr. 191. Following administrative denial, she attended and testified at a hearing on July 31, 2013, where she amended her onset date to July 1, 2011. Tr. 44.

Her application nevertheless was denied. Tr. 73. Although the ALJ found that Devine's "diabetes mellitus, affective mood disorder, inflammatory disease, anxiety, and chronic obstructive pulmonary disease" constituted severe impairments (Tr. 67),[2] he concluded, after consulting a vocational expert (VE), that Devine retained the RFC for medium work, including her past work as a cleaner and checker. Tr. 72. He thus found her "not disabled" because (1) she could return to her past

---

[2] At step one, the ALJ also found that Devine had not engaged in substantial gainful activity since April 4, 2009. Tr. 67. This is somewhat odd (though not necessarily erroneously so) because Devine last worked in early 2011 (Tr. 42) and in fact never quit; her employer laid her off. *Id.* Even odder, she collected unemployment (*id.*) for six months thereafter, until July 2011. Tr. 43. To do so, she had to represent to the State of Georgia that "she was ready, willing, and able to work but unable to find employment, during the same time period that she now says she was unable to sustain fulltime employment." *Ingram v. Colvin*, 2015 WL 7302739 at * 3 (S.D. Ga. Nov. 18, 2015), *adopted*, 2016 WL 67291 (S.D. Ga. Jan. 5, 2016). The Court assumes the ALJ meant July 1, 2011, since the hearing transcript reveals Devine amended her onset date during the proceeding because of her previous testimony about receiving unemployment benefits. Tr. 44.

work, and (2) other jobs that she could perform exist in significant numbers in the national economy.  Tr. 72-73.

Devine disagrees, arguing that the ALJ failed to properly weigh medical evidence when he discounted the opinions of Dr. David Vincent (Devine's treating psychiatrist) and Dr. Jack Heneisen (her treating family practitioner).  *See* doc. 11 at 13.  Compounding that error, says Devine, the ALJ "failed to properly evaluate [her] credibility," and relied on flawed testimony from a vocational expert.  *Id.* at 22-25.

## A.  Weighing Medical Evidence

### 1.  Dr. Vincent

Vincent began treating Devine in July 2010.  Tr. 331.  In July 2012, he completed a psychiatric impairment questionnaire in which he opined -- based on clinical findings (he checked boxes on the "clinical findings" portion of a form) of emotional lability, suicidal ideation, paranoia, social isolation, and racing thoughts -- that Devine suffered a number of moderate to marked functional limitations.  Tr. 710.  He also stated that Devine's conditions made her "incapable of even 'low stress,'" and would likely result in more than three absences a month from work.

Tr. 715-16.

The ALJ afforded Vincent's opinion "limited weight" because it was "not completely supported by the medical record," and not based on "objective medical evidence." Tr. 70-71. That conclusion, complains Devine, stems from applying physical impairment criteria to psychological sufferings and, in any event, "is directly contradicted by the evidentiary record." Doc. 11 at 14-15. Because Vincent's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," Devine believes it is entitled to controlling weight (at a minimum she thinks it deserves deference). Doc. 11 at 17 (quoting 20 C.F.R. § 404.1527(c)(2)).

"As a general rule, 'the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists.' *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006)." *Black v.*

*Colvin*, 2015 WL 7185506 at * 3 (S.D. Ga. Nov. 13, 2015), *adopted*, 2016 WL 296260 (S.D. Ga. Jan. 12, 2016). "The opinion of a treating physician, such as Dr. [Vincent], 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (cites omitted).

That happened here. In giving Vincent's opinion "little weight," the ALJ stated that it was "not supported by the medical records, and not based upon objective medical evidence." Tr. 71. Scrutiny of the entire record verifies that conclusion. Kristiansson Roth, a consultative psychological examiner, for example, found that Devine "seems to possess the ability to understand and remember simple instructions," is "able to sustain most goal directed behaviors," and "is likely to adhere to a normal

work schedule and can maintain an adequate pace in a work setting." Tr. 481. Roth also found Devine's "ability to interact in a socially appropriate manner with co-workers, supervisors and the public is adequate, consistent with her presentation during this consultation." *Id.* State consulting (*i.e.*, non-examining) psychologist Anna Williams, after reviewing some of Devine's medical records (treating psychiatrist notes and observations, and Devine's self-report), came to a similar conclusion in her mental residual functional capacity assessment. *See* Tr. 492 (finding "no substantial psy[chological, functional] limitations"); Tr. 490-91 (finding several moderate, but no marked, functional limitations stemming from Devine's bi-polar diagnosis).

Devine contends that Williams' opinion essentially shouldn't count because she never even performed an examination. Doc. 11 at 16. It's true that non-examining consultant opinions are "entitled to little weight and [cannot] serve as substantial evidence," when contrary to well-supported examining physician opinions. *Sharfaz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). But here Vincent's opinion stands in contrast to both Williams' *and* Roth's. That consistent inconsistency

lends credence to Williams' opinion, undermines Vincent's conclusions, and constitutes good cause to discount his opinion, particularly in light of Devine's lack of credibility (discussed below).[3]  *See Phillips*, 357 F.3d at 1240.

What's more, as noted in footnote two, Devine never stopped working because of mental impairments.  She lost her deli cook job at a convenience store/gas station on January 4, 2011 (tr. 202) because the owner closed the business, not because her mental health issues interfered.  *See* Tr. 42, 227.  Contrast that with Vincent's conclusion that Devine suffered marked limitations that would result in her missing at least three days of work each month (tr. 716), and negatively impact her ability to interact appropriately with the public and co-workers.   Tr. 713.

---

[3]  As Devine notes, psychiatric impairments present substantiation difficulties that physical maladies do not.  Rarely can more typical objective measures of illness or medical condition (think MRIs, blood tests, or biopsies) provide support for a mental impairment diagnosis.  Instead, "when mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)).  Those observations and diagnoses, in turn, often are at least in part informed by a claimant's subjective reporting.  *See Purdin v. Colvin*, 2013 WL 3007156 at * 5 (M.D. Ala. June 14, 2013) ("The court recognizes that psychiatric diagnoses are often based to some extent on subjective reports of symptoms rather than on diagnostic test results.").  And when, as here, the claimant herself has little to no credibility, the believability of her subjective reports diminishes.

Indeed, the deli owner -- who had employed Devine since 2007 (tr. 202) -- indicated that Devine had no issues with punctuality, attendance, frequent absences, following work-related instructions, adapting to changes in her work routine, or interacting appropriately with co-workers and the public. Tr. 227 (employment questionnaire, completed in August 2011, one month after Devine's alleged onset date). And no medical evidence in the record indicates significant changes in her mental impairments since then that would explain the disparity between her employer's and Vincent's assessments of her work and work-related limitations.

Vincent's "conservative treatment of [D]evine . . . also undermines his opinion." Doc. 12 at 8; *Harwell v. Heckler*, 735, F.2d 1292 (11th Cir. 1984) (infrequent use of "potent pain medication," along with an "essentially benign objective medical record," "description of daily activities[,] as well as claimant's" credibility," supported ALJ's rejection of claimant's pain claim); *Newbery v. Commissioner, Social Security Admin.*, 572 F. App'x 671, 671 (11th Cir. 2014) (conservative course of treatment "belied [doctor's] findings of severe limitations"). Devine has

never been hospitalized for psychiatric illness (tr. 711) despite allegedly suffering hallucinations (tr. 710), *and* having suicidal ideations (*id.*), both of which can lead to inpatient psychiatric care. *See, e.g.*, *Mills v. Colvin*, 2014 WL 2212211 at * 2 (S.D. Ga. May 28, 2014) (claimant "admitted to Candler Hospital [because] of auditory hallucinations"). And Vincent's sole treatment, prescribed after thrice yearly examinations, was medication.

That's not to say that severe limitations cannot exist absent aggressive and far-reaching treatment. They can. But where, as here, a claimant alleges symptoms and limitations that in many cases warrant more intensive treatment, evidence of a conservative plan of care can weigh in favor of (though not decisively so) discounting a treating physician's findings. *See Newbery*, 572 F. App'x at 671. When considered alongside negative credibility findings (*see infra*) and contradictory objective medical evidence (Williams' and Roth's opinions),[4]

---

[4] Additional non-examining consultants contradict Vincent's and bolster Williams' and Roth's opinions. *See* Tr. 506 (consulting psychologist noted that Devine functioned well at her previous job "of 3+yrs," even when her symptoms of mental illness "were worse"); Tr. 736-38 (findings by Dr. Aroon Suansilppongse that Devine would be "minimally limited due to anxiety" and depression, "inherently limited intellectual function as well as alleged hallucinatory experience," "social avoidance

conservative treatment in the face of aggressive illness amounts to substantial evidence for rejecting Vincent's opinion.[5]

## 2. Dr. Heneisen

As Devine's family practice doctor since at least April 2011, Heneisen treated her over the years for a variety of ailments, including diabetes mellitus, hypertension, hypothyroidism, and chronic obstructive pulmonary disease (COPD). Tr. 512. In January 2012, he completed a Multiple Impairment Questionnaire in which he identified Devine as

and infrequent episodes of manic behavior").

[5] Devine insists that Vincent's opinion deserves deference even if it's not given controlling weight. *See* doc. 11 at 17-18 (citing SSR 96-2p ("Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")). She claims that the length and regularity of her treatment relationship with Vincent, his specialization in psychiatry, the evidentiary support he provided for his opinions, and confirmation of those opinions by his treatment notes, militate in favor of deferring to Vincent's opinion. Doc. 11 at 18 (citing 20 C.F.R. § 404.1527(c)).

In isolation, Vincent's psychiatric specialty supports deference. But the evidentiary support for his opinions is weak and inconsistent with other, more credible, record evidence (*e.g.*, Roth's opinion). And his treatment relationship with Devine only dates to July 2010 (Tr. 331), barely one year before her amended disability onset date (and one year *after* her original onset date). A specialization alone cannot, in the face such negative contrary evidence, support deferring to a treating physician's opinion.

suffering from bipolar disorder, osteoarthritis, COPD, atherosclerotic coronary vessel disease, diabetes, angina, and migraines. Tr. 543. For prognosis, Heneisen wrote "poor" without elaboration, and listed only angina, an arteriogram showing artery blockages, and joint pain, "mostly knees," as clinical findings supporting his diagnoses. *Id.*

He identified several functional limitations caused by Devine's arthritis (which he considered her primary problem at the time), including a two hour limit on sitting and five hour limit on standing in an eight hour day, as well as a 20 lb. limit on lifting and 5 lb. limit on carrying. Tr. 545-46. Heneisen also opined that Devine, despite her "mostly knee[]" (*i.e.*, lower body joint pain (tr. 543), has "significant limitations in doing repetitive reaching, handling, fingering or lifting" because her stiff joints cause her to "drop[] things." Tr. 546. She is "[e]ssentially [p]recluded" from using her hands for fine manipulation, and significantly limited in reaching, grasping, turning, and twisting. Tr. 546-47. According to Heneisen, she needs "to avoid wetness," fumes, gases, temperature extremes, dust, heights, and cannot push, pull, kneel, bend, or stoop. Tr. 549. Thankfully, noise, vision problems, and

humidity pose no limitation to Devine's ability to "work at a regular job." *Id.*

Just six months later, Heneisen wrote a letter "pertain[ing] to Mrs. Devine's disability." Tr. 802. He opined that it was "due[, not to joint pain, but] mostly to unstable angina which is not treatable surgically due to the fact it is small vessel disease." *Id.* The chest pain she experiences "make[s] it impossible to do any walking or activity without shortness of breath and crushing chest pain." *Id.* Heneisen concluded that Devine, because of her chest issues and bipolar disease (which causes "her stress to increase"), "is totally unable to do any work because any activity causes pain and shortness of breath and stress increases the pain." *Id.* Strangely absent from the July 2012 letter is any mention of osteoarthritic limitations, which a mere six months prior constituted Devine's primary problem. Tr. 545.

The ALJ "grant[ed] no weight to the [questionnaire-based] opinion of Dr. Heneisen as it [was] inconsistent with the majority of the medical record" and "supported only by [Devine's] subjective allegations rather than by objective medical evidence." Tr. 71. He found that Devine's

"activities of daily living [ADLs] are completely inconsistent with [Heneisen's] assessement," and that "[w]ere . . . Heneisen correct, [Devine] never could do housework, vacuum, do the laundry, or cook -- and yet she does." *Id.* Heneisen's letter received no weight either. The ALJ noted that his small vessel disease diagnosis "rather ignore[d Devine's] cardiac treatment records," while his bipolar disease observation deserved no credit because Heneisen isn't a specialist. Tr. 72.

Devine first argues that "what [she] can do at home at her discretion" is significantly different from "what she could do if placed in a competitive work environment 8 hours a day, 40 hours a week and required to perform tasks at the direction of an employer." Doc. 11 at 18. Her ADLs thus are not inconsistent with the limitations Heneisen identified in his questionnaire. She next contends that, "[c]ontrary to the ALJ's suggestion," Heneisen supported his opinions (both the questionnaire and 2012 letter) with "clinical and diagnostic" evidence -- an "arteriogram that revealed a blockage and clinical evidence of chronic angina pain, joint pain, and crepitus." Doc. 11 at 19 (citing tr. 466, 510,

512, 514, 571, 742, 743, 751, 774).

Devine's ADL argument falls flat.  Perhaps people can, as a general proposition, engage in a wider range of discretionary home activities than they can activities at work.  Even if that's true, a purely physical task like vacuuming a floor requires the same physical abilities in one place as it does another.  Any general rule thus cannot explain the unbridgeable gaps between the alleged limitations identified in Heneisen's questionnaire and Devine's self-described ADLs.

Heneisen painted a picture of an upper body invalid.  In his opinion, Devine is -- whether at work or home (the questionnaire does not make a distinction) -- "[e]ssentially [p]recluded" from using her fingers/hands for fine manipulations," or "using [her right arm] for reaching" (she's "only" "significantly limited" with her left arm).  Tr. 547.  She's also "significantly limited" in grasping, turning, [and] twisting" objects.  *Id.*  If accurate, those limitations would, as the ALJ recognized, make vacuuming, cooking, and laundry -- all activities she engages in (tr. 29) -- nigh on impossible.[6]

---

[6]  Being at home or work doesn't really change the functionality needed, for example,

Devine's contradictory ADLs notwithstanding, Heneisen's opinions (the January 2012 questionnaire (tr. 550), and the July 2012 Letter (Tr. 802)) aren't even consistent with each other. As noted above, Heneisen first opined that the majority of Devine's functional limitations stemmed from joint issues. When asked to list her primary symptoms, he wrote "all joints hurt, esp. knees, chronic fatigue, bipolar disorder." Tr. 544; *see also id.* (Devine's pain's nature is "arthritic pain all over esp knees"). Nowhere did he state that chest pain, *the* symptom of angina, [7] contributed to Devine's limitations (though he did list angina as a diagnosis and chest pain as a clinical finding, tr. 543).[8] Fast forward six

---

to push and pull (something Heneisen says Devine seriously struggles with) a vacuum, or to chop food for cooking (which requires the fine motor manipulations he says she is essentially precluded from doing).

[7] Angina *is* chest pain. *See* http://www.mayoclinic.org/diseases-conditions/angina/basics/definition/con-20031194 ("Angina is a term used for chest pain caused by reduced blood flow to the heart muscle.").

[8] Diagnoses and symptoms, even ones that constitute severe impairments at step two of the disability analysis, mean nothing if they do not cause functional limitations. *See Moore*, 405 F.3d at 1213 n. 6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Wright v. Commissioner of Social Security*, 327 F. App'x 135, 137 (11th Cir. 2009) (ALJ need not include diagnoses in hypotheticals to VEs when they do cause no functional limitations). That's because DIB and SSI's disability definition require that severe health problems preclude substantial gainful activity, not that they simply exist. *See* 20 C.F.R. §§ 404.1505(a); 404.1520(a)(4)(iv).

months, however, and suddenly small vessel disease and associated extreme chest pain completely undergird Heneisen's disability opinion, while arthritis rates no mention at all. *See* Tr. 802 ("[H]er disability is due mostly to unstable angina which is not treatable surgically due to the fact it is small vessel disease," and causes "crushing chest pain").[9]

Beyond his inconsistent letter and questionnaire, and the inconsistency between Devine's ADLs and her alleged functional limitations (impossible to ignore data points), yet more inconsistent, substantial, medical evidence exists that undermines Heneisen's opinion.[10] Devine's treating cardiologist, Dr. Chadwick Huggins, unlike Heneisen (a family practitioner), never diagnosed her with small vessel disease, and questioned whether her chest pains were even angina. Tr.

---

[9] Heneisen wrote a second letter nearly two years after his first in which he states that both angina and arthritis limit Devine. Tr. 803. But he wrote it after the ALJ denied benefits, and Devine never cites it to support her arguments. Tr. 73. That's just as well since the second letter, coming on the heels of two other contrary opinions by the same author, reeks of "contradictorial smoothing," not supportable medical opinion.

[10] Even the clinical findings Heneisen lists (his own observations, Devine's self-reporting, and an arteriogram, tr. 543-44) fall apart in the end. Heneisen's credibility (and thus his observations) hangs in tatters (*see supra*), as does Devine's (*see infra*). And the arteriogram -- the only non-observational, non-reportable, objective medical evidence remotely supporting Heneisen -- shows *possible* coronary artery disease, but does not identify small vessel disease as a diagnosis.

777 ("I am uncertain as to whether this represents angina.").  Not even two months after her alleged onset date, Huggins treatment notes indicate that Devine's "[s]ymptoms *do not* include chest pain."  Tr. 778 (emphasis added).

Objective test data confirms Huggins' opinion and undermines Heneisen's.  An October 2011 nuclear stress test,[11] for example, showed normal myocardial perfusion and "left ventricular systolic function," no evidence of ischemia, and a left ventricular ejection fraction of 77% (that's pretty good).[12]  An August 2011 cardiac catheterization likewise revealed no major blockages, "a borderline significant RCA lesion," [13] and nonobstructive coronary artery disease (which by definition isn't expected to cause angina).[14]  Put differently, all cardiac tests and examinations by

---

[11]  A nuclear stress test "measures blood flow to [the] heart at rest and while [the] heart is working harder as a result of exertion or medication. The test provides images that can show areas of low blood flow through the heart and damaged heart muscle." http://www.mayoclinic.org/tests-procedures/nuclear-stress-test/basics/definition/prc-2 0012978.

[12]  *See* Tr. 464 (Devine's cardiac catheterization indicating "normal left ventricular systolic function with an ejection fraction of 65%").

[13]  Coronary artery lesions are accumulations of fatty deposits in the coronary arteries.

[14]  "Nonobstructive coronary artery disease (CAD) is atherosclerotic plaque that

a cardiologist reveal no serious heart issues and never led to a small vessel disease diagnosis. In the face of that testing and Huggins' notes (not to mention its internal and ADL-based inconsistencies), Heneisen's contrary, non-specialist,[15] opinion -- which has no clinical evidentiary support other than Devine's self-reporting -- deserves no deference, much less controlling weight. *See Sharfaz*, 825 F.2d at 280 ("[The ALJ may reject any medical opinion if the evidence supports a contrary finding."). The ALJ thus properly discounted it.

## B.    Devine's Credibility

In addition to contesting the weight given her treating physicians, Devine argues that the ALJ's skepticism of her subjective limitation allegations lacks substantial evidentiary support.   Doc. 11 at 22.   Where, as here, a claimant attempts to establish disability through her own testimony of subjective limitations, the "pain standard" applies. *Dyer*,

---

would not be expected to obstruct blood flow *or result in anginal symptoms*." Thomas M. Maddox, et al., *Nonobstructive Coronary Artery Disease and Risk of Myocardial Infaction*, J. AM. MED. ASS'N, Nov. 5, 2014, *available at* http://jama.jamanetwork.com/article.aspx?articleid=1920971 (emphasis added).

[15]  *See* 20 C.F.R. § 1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

395 F.3d at 1210. That demands:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Watson v. Colvin*, 2015 WL 8467014 at * 6 (S.D. Ga. Nov. 18, 2015)

(quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

As the Eleventh Circuit explained:

> The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986); *Landry*, 782 F.2d at 1152. If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Hale*, at 1054; *MacGregor*, 786 F.2d at 1054.

*Holt*, 921 F.2d at 1223.

The ALJ found that Devine had a qualifying medical condition whose severity could reasonably be expected to give rise to the reported symptoms. Tr. 69. Her "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms," however, were "not entirely credible." *Id.* In particular, the ALJ found that the opinions

21

from Devine's

> treating and examining physicians, as well as findings upon objective examination, are generally inconsistent with the claimant's testimony of such significant complaints of pain and dysfunction. The medical evidence does not establish pain, or mental symptoms of the level and severity that would result in debilitating limitations. The medical evidence does not establish any significant medication side effects that would result in debilitating limitations. [Devine] did not require significant inpatient hospitalizations [or] recurrent emergency room visitations, surgery, prolonged physical therapy or chronic pain management for her physical complaints.
>
> * * *
>
> Although the claimant alleged difficulties with anxiety, depression, difficulty concentrating, and forgetfulness, she was able to self-structure and execute her activities of daily living with no difficulties. The medical records revealed that the claimant talked on the phone, managed her household chores (i.e., vacuuming, doing laundry, sweeping, mopping, making beds, reading and visiting with family). The record also revealed that the claimant used a home computer and in fact enjoys doing so. Additionally, medical sources indicated that the claimant could adhere to a normal work schedule and that she would not decompensate (Exhibit 4F). Overall, these activities when viewed in conjunction with the other inconsistencies regarding the claimant's allegations of pain and dysfunction, further limit the claimant's credibility.

Tr. 69-70.

Substantial evidence supports the ALJ's credibility determination.

Devine's medical records, as discussed by the ALJ, do not indicate that her

condition limited her to the degree alleged. Tr. 68-73. *See* SSR 96-7p;

*Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). She

received a variety of diagnoses, but as noted above, those do not establish limitations. *See Moore*, 405 F.3d at 1213 n.6. Even more importantly, clinical examinations and diagnostic studies did not reveal objective medical findings (beyond Devine's subjective reporting) to support her allegations of disabling limitations, particularly for any consecutive twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (holding that a claimant's impairments and inability to work must last for a continuous period of at least twelve months).

At bottom, Devine failed to meet her burden of providing sufficient evidence to support her subjective complaints of disabling symptoms. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 404.1529; *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ properly considered the relevant evidence, and weighed and resolved any conflicts in it. *See Phillips*, 357 F.3d at 1240 n. 8. Hence, substantial evidence supports the ALJ's negative credibility determination.

## C.    Reliance on VE Testimony

At step four of the sequential analysis, the ALJ solicited VE testimony to determine if Devine could perform past work or, if not,

whether other jobs existed that she could obtain. Tr. 73. To suss out which jobs (if any) her impairments precluded, the ALJ asked the VE to assume

> a capability for a range of medium work. With regard to postural limits, the incumbent should not climb ladders or scaffolds more than occasionally or crawl more than occasionally. Additionally, in the area of psychological limitations, the incumbent would be best suited for simple, relatively repetitive work which did not require frequent or prolonged interpersonal interactions.

Tr. 50. Devine argues that hypothetical is "incomplete" and requires remand because it did not "account fully for the mental restrictions found by the ALJ in the area of concentration, persistence, or pace." Doc. 11 at 24; *id.* at 25 ("While the ALJ limited Ms. Devine to simple repetitive work, these restrictions say nothing about her capacity to remain on task when completing such work or the ability to maintain a particular pace required by the employer.").[16]

As a general rule, ALJ's must specifically include concentration, persistence, and pace limitations in hypotheticals presented to VEs. *See Winschel*, 631 F.3d at 1180. "But when medical evidence demonstrates

---

[16] The ALJ asked a second hypothetical, but it only added a limit on standing and left the psychological limitation component the same as hypothetical one. Tr. 50-51.

that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* Similarly, hypotheticals "adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations." *Id.*

The ALJ's hypothetical explicitly, and properly, included psychological limitations that "best suited" Devine to "simple, relatively repetitive work which did not require frequent interpersonal interactions." Tr. 50. Because medical evidence supports the assessment that Devine can engage in "simple, relatively repetitive work," despite the moderate concentration, persistence, and pace limitations the ALJ found, the hypothetical presents no error.[17] *See Winschel*, 631 F.3d at 1181.

---

[17] As the Commissioner correctly notes, Devine failed to support her allegation that she has difficulty staying on task and maintaining appropriate pace. The burden to prove that allegation fell on Devine, and her failure to shoulder it neutralizes that argument.

## IV.  CONCLUSION

Because the ALJ properly discredited treating physician opinions, discounted Devine's own pain report, and relied on the VE's testimony, the Commissioner's final decision should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED**, this  12th  day of July, 2016.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA